United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 23, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 16-32488 |
| SANDRIDGE ENERGY, INC., *et al.*, | § | |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

SandRidge Energy, Inc., moves to reopen this case and enforce its Chapter 11 plan.  Prior to filing bankruptcy, SandRidge and several of its officers were named as defendants in two federal securities class action lawsuits.  The lawsuits were stayed when SandRidge filed bankruptcy in 2016.  Following plan confirmation, the lawsuits resumed against the officers.  They also resumed against SandRidge as a nominal defendant.

The lawsuits resulted in a $17 million settlement with the former officers.  The settlement amount was paid by D&O insurance policies.

Following payment of the $17 million, the Insurers sued SandRidge.  The lawsuit, filed as a subrogee of two of the former officers, seeks to enforce the officers' indemnity rights against SandRidge.  SandRidge argues that its indemnity obligations to the two officers were discharged in its Chapter 11 plan.  SandRidge seeks an order directing the Insurers to dismiss their subrogation claim with prejudice.

Because SandRidge's D&O policies and indemnity obligations were assumed in its Chapter 11 plan, they were not discharged.[1]  SandRidge's motions to reopen the case and enforce the plan are denied.

---

[1] The Court expresses no view on the merits of the indemnification claims.

# BACKGROUND

## I.   FACTUAL BACKGROUND

SandRidge is an oil and gas exploration and production company with operations in the Mid-Continent region of the United States. In 2012 and 2015, SandRidge and three of its officers—Tom Ward, James D. Bennett, and Matthew K. Grubb—were named as defendants in two federal securities class actions lawsuits in the United States District Court for the Western District of Oklahoma (the "Securities Lawsuits").[2] The Securities Lawsuits were stayed when SandRidge filed bankruptcy in 2016.

Through its bylaws, certificates of incorporation, and certain indemnification agreements, SandRidge provided broad indemnification to its directors and officers for certain conduct in their capacity as directors and officers of SandRidge (the "Indemnification Obligations"). The Insurers allege that SandRidge was obligated to indemnify its officers and directors for the Securities Lawsuits.

SandRidge maintained various Directors and Officers liability insurance policies (the "D&O Policies"). The policies state that when insurance coverage is provided to a director or officer following SandRidge's wrongful refusal to indemnify, the Insurers have subrogation rights against SandRidge for payments made as a result of the wrongful refusal.

## II.   PROCEDURAL BACKGROUND

On May 16, 2016, SandRidge and its related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See, e.g.*, ECF No. 1. On September 20, 2016, the Court confirmed SandRidge's amended joint Chapter 11 plan of reorganization. ECF No.

---

[2] The lawsuits are captioned as *Glitz v. SandRidge Energy, Inc., et al.*, Civil Action No. 5:12-cv-01341-LRW and *Duane & Virginia Lanier Trust v. SandRidge Energy, Inc., et al.*, Civil Action No. 15-cv-00634-M.

901. The plan went effective on October 4, 2016. ECF No. 929. This case was closed on November 19, 2020. ECF No. 1467.

### A.   SandRidge's Chapter 11 Plan

#### (1)   The Assumed D&O Policies and Indemnification Obligations

SandRidge's Chapter 11 plan assumed the Indemnification Obligations and D&O Policies pursuant to § 365 of the Bankruptcy Code. The parties dispute whether the plan's assumptions obligate SandRidge to pay the post-effective date indemnification costs of Bennett and Grubb covered by the Insurers pursuant to the subrogation rights contained in the policies.

Articles IV.M. and V.F. of the plan provide the following assumption of the D&O Policies:

> To the extent that the D&O Liability Insurance Policies[3] are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the

---

[3] The plan defines "D&O Liability Insurance Policies" as "all insurance policies (including any 'tail policy') of any of the Debtors for current or former directors', managers', and officers' liability." ECF No. 1530-4 at 82.

D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed.

. . .

Without limiting Article IV.M, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

ECF No. 1530-4 at 105, 108.

Article V.D. of the plan provides the following assumption of the Indemnification Obligations:

The Debtors and Reorganized Debtors shall assume the Indemnification Obligations[4] for the Debtors' current and former directors, officers, managers, and employees, and current attorneys, accountants, investment bankers, and other professionals of the Debtors, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such

---

[4] The plan defines "Indemnification Obligations" as "each of the Debtors' indemnification obligations in place as of the Effective Date, set forth in any of: (a) the organizational documents of the Debtors (including the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, or board resolutions); (b) Employment Contracts; or (c) an engagement or retention letter as to professional or advisory services."  ECF No. 1530-4 at 84.

> obligation arose; *provided, however,* that one or more
> former (as of the Petition Date) directors and officers of the
> Debtors, as agreed by the Debtors and the Required Second
> Lien Creditors, shall not have such indemnification
> obligations assumed.   Notwithstanding the foregoing,
> nothing shall impair the ability of the Reorganized Debtors
> to modify indemnification obligations; *provided* that none
> of the Reorganized Debtors shall amend and/or restate any
> New Organizational Documents before or after the
> Effective Date to terminate or adversely affect any of the
> Indemnification Obligations.

ECF No. 1530-4 at 108.

Article V.D. provides for the assumption of SandRidge's Indemnification Obligations except for those specifically not assumed by the Plan.  The Court's confirmation order specifically confirms that

> any indemnification obligation of a Debtor to Tom Ward,
> an individual, as a former director and officer of one or
> more of the Debtors ("Ward"), is discharged and released
> and any Executory Contracts between a Debtor and Ward
> are hereby rejected under section 365 of the Bankruptcy
> Code. . . .   Notwithstanding the foregoing, Ward's rights
> and benefits under any and all policies of insurance
> providing coverage for Ward, including without limitation
> the D&O Liability Insurance Policies, shall in all respects
> be retained by him and shall not in any manner be
> discharged, impaired, or otherwise modified or affected by
> Confirmation or Consummation of the Plan. For the
> avoidance of doubt, Ward shall be a Released Party and a
> Releasing Party as defined in the Plan.

ECF No. 1530-4 at 65–66.  The plan and confirmation order do not contain specific provisions rejecting SandRidge's indemnification

obligations toward Bennett and Grubb. The plan assumed these obligations.

Article V.A. of the plan also contains the following provision regarding the modification of any assumed contracts:

> Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

ECF No. 1530-4 at 106.

### (2) The Plan's Releases and Treatment of Securities Claims

The plan directly addresses SandRidge's obligations in connection with the Securities Lawsuits through the plan's treatment of securities claims and its various release and injunction provisions.

First, the Plan defines "Section 510(b) Claims" as

> any Claims against the Debtors arising from (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, (b) purchase or sale of such a

> security, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, including the Claims asserted against the Debtors in *In re SandRidge Energy, Inc. Securities Litigation*, Case No. 5:12-cv-01341-W (W.D. Ok.), *Barton W. Gernandt, Jr., et al., v. SandRidge Energy, Inc., et al.*, Case No. 15-CV-834-D (W.D. Ok.), and *Duane & Virginia Lanier Trust v. SandRidge Energy, Inc.*, et. al, Case No. CIV-15-00634-M (W.D. Ok.).

ECF No. 1530-4 at 89. The plan classifies Section 510(b) Claims in Class 7, under which "[e]ach Section 510(b) Claim shall be deemed canceled and released and there shall be no distribution to Holders of Section 510(b) Claims on account of such Claims." ECF No. 1530-4 at 98.

Article VIII.F. of the plan contains a broad release. However, it specifically carves out a director's or an officer's indemnification claim against SandRidge:

> Except as otherwise provided in the Plan, as of the Effective Date and to the fullest extent authorized by applicable law, for good and valuable consideration, including their cooperation and contributions to these Chapter 11 Cases, each Releasing Party expressly, unconditionally, generally, and individually and collectively releases, acquits, and discharges the Debtors, Reorganized Debtors, and Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any Holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by

statute or otherwise, that such Releasing Party (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Debtors' intercompany transactions (including dividends paid), any Avoidance Actions, Claims or Causes of Action identified or set forth in the Debtors' Schedules . . . ***provided that nothing in the foregoing shall result in any of the Debtors' officers and directors waiving any indemnification Claims against the Debtors or any of their insurance carriers or any rights as beneficiaries of any insurance policies, which indemnification obligations and insurance policies shall be assumed by Reorganized Debtors, except to the extent provided for in the Plan***.

ECF No. 1530-4 at 117–18 (emphasis added).  The plan also enjoins the pursuit of claims released under Article VIII.F.  ECF No. 1530-4 at 118–19.

Although the plan contains a broad release and an injunction that would typically bar litigation of the Securities Lawsuits, the Court's confirmation order states that the lawsuits may proceed directly against non-debtors and SandRidge in its capacity as a nominal defendant:

The Plan and this Confirmation Order do not, and nothing in the Plan or this Confirmation Order shall be interpreted to, (i) discharge, release, or otherwise impact any (x) claims (as defined under Section 101(5) of the Bankruptcy Code) or other Causes of Action asserted in, or that could have been asserted based upon the facts and circumstances alleged in, the complaints in *Duane & Virginia Lanier Trust v. SandRidge Energy, Inc.*, et. al, Case No. CIV-15-00634-M (W.D. Ok.), *In re SandRidge Energy, Inc. Securities Litigation*, Case No. 5:12-cv-01341-W (W.D.

Ok.), or *Barton W. Gernandt, Jr., et al., v. SandRidge Energy, Inc.*, et al., Case No. 15-CV-834-D (W.D. Ok.) (collectively, the "<u>Direct Actions</u>") by any Entity that was appointed, or was eligible to be appointed, as lead plaintiff, or other members of the proposed classes, in the Direct Actions (collectively, the "<u>Direct Action Plaintiffs</u>"), in their capacity as such, against any Non-Debtor Subsidiary, Released Party (other than any Debtor), or other Entity other than a Debtor, whether or not currently named as a defendant in a Direct Action (each, a "<u>Non-Debtor Litigant</u>"), or (y) any future claims (as defined in Section 101(5) of the Bankruptcy Code) or Causes of Action against any Non-Debtor Litigant determined to relate back to the filing of any such complaint; (ii) enjoin the Direct Action Plaintiffs from continuing the Direct Actions and enforcing by any manner or means any judgment or other recovery obtained therein against any Non-Debtor Litigant; (iii) prevent the Direct Action Plaintiffs from seeking discovery from the Reorganized Debtors in connection with the Direct Actions, including but not limited to seeking production of documents in the possession, custody, or control of the Reorganized Debtors or their agents or their respective transferees, subject to all rights of the Reorganized Debtors under applicable non-bankruptcy law; or (iv) release any Debtor as a nominal defendant, or enjoin parties from pursuing the Direct Actions against a Reorganized Debtor as a nominal defendant, in each case solely to the extent necessary to recover on any claims (as defined in section 101(5) of the Bankruptcy Code) or other Causes of Action against the Debtors from available remaining coverage under any applicable insurance policy, to the extent applicable.

ECF No. 1530-4 at 61–62.

Finally, Article VII.G. of the plan also satisfies any proof of claim filed on account of an assumed indemnification obligation of a director or officer:

> [a]ll Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

ECF No. 1530-4 at 115.

### B.   Post-Confirmation Litigation of the Securities Lawsuits

Following the confirmation of SandRidge's Chapter 11 plan, the Securities Lawsuits resumed against Ward, Bennett, and Grubb, and against SandRidge as a nominal defendant for the purpose of pursuing recovery under the D&O Policies. In November 2021, the Insurers paid $17 million to settle the claims against Bennett and Grubb.[5]

On January 20, 2021, SandRidge filed a complaint in the District Court of Oklahoma County, Oklahoma, against Bennett and Grubb, alleging that they were not entitled to be indemnified by SandRidge for the Securities Lawsuits. On December 28, 2021, SandRidge filed an amended complaint adding the Insurers as defendants in the lawsuit. ECF No. 1530-19. The amended petition sought a declaration to resolve "whether the legal fees and costs and funds for a proposed settlement of two different class action lawsuits are subject to indemnification by

---

[5] SandRidge alleges that it "did not consent to or participate in the Settlements." ECF No. 1520 at 5. Because this Opinion determines whether SandRidge's plan and the Court's confirmation order discharged the Indemnification Obligations, the issue of SandRidge's participation into the settlement is not relevant to the Court's decision. The Court makes no findings on the issue.

SandRidge or whether such funds are to be paid pursuant to policies issued by the Insurer Defendants." ECF No. 1530-19 at 2. The amended complaint argued that SandRidge had no obligations to indemnify Bennett and Grubb because Bennett and Grubb breached their fiduciary duties by wrongfully preserving the Indemnification Obligations for Bennett's and Grubb's personal benefit and in contravention with SandRidge's best interests. ECF No. 1530-19 at 2, 13–14.

The Insurers asserted a counterclaim against SandRidge in the Oklahoma lawsuit to "enforce the indemnification provisions in the SandRidge bylaws and certificate of incorporation and . . . the indemnification agreement [Bennett and Grubb] entered into with SandRidge, all of which provide [Bennett and Grubb] with broad advancement and indemnifications rights" (the "Insurer Subrogation Claim"). ECF No. 1530-23 at 11. The Insurers sought a declaration that "SandRidge is obligated to indemnify Counterclaim Plaintiffs with respect to the [Securities] Lawsuits and . . . the reimbursement of funds incurred in the defense and subsequent settlement of the [Securities] Lawsuits." ECF No. 1530-23 at 12. Because the Insurers provided coverage to Bennett and Grubb for the $17 million settlement, the Insurer's counterclaim essentially seeks to recover the costs of the settlement as indemnity from SandRidge through the subrogation rights contained in the D&O Policies. The Insurers do not seek to recover the amounts paid to settle the claims against Ward.

## C.   The Motions to Reopen the Bankruptcy Case and Enforce the Plan

In response to SandRidge's Oklahoma lawsuit, on April 28, 2023, Sandridge's former counsel (Kirkland & Ellis) filed a motion to reopen SandRidge's bankruptcy case and enforce the plan. ECF No. 1478. Kirkland & Ellis, joined by Bennett, Grubb, and the Insurers, filed an amended motion to reopen on August 3, 2023. ECF No. 1494. On August 22, 2023, SandRidge dismissed its Oklahoma complaint without prejudice, leaving only the Insurer Subrogation Claim. ECF No. 1530-31.

Following a hearing on the motion to reopen, on September 25, 2023, the Court entered an order enforcing the plan and confirmation order and prohibiting SandRidge "from initiating or otherwise continuing any action, whether offensively or defensively, premised upon or challenging the assumption of the Indemnification Obligations." ECF No. 1512 at 2. The order further prohibited "Sandridge, along with its agents, attorneys and those acting in concert therewith, from asserting any claims or defenses or taking any other actions in contradiction of or otherwise inconsistent with the terms of the Plan or the Confirmation Order." ECF No. 1512 at 2.

On February 10, 2025, SandRidge moved to reopen the bankruptcy case and enforce the plan. ECF Nos. 1519; 1520. Through the motions, SandRidge argues that the Insurer Subrogation Claim violates the plan and confirmation order because the claim is disallowed and canceled under the plan, and therefore there is good cause to reopen the bankruptcy case and enforce the plan and confirmation order. SandRidge seeks an order declaring that the Insurer Subrogation Claim is barred by the plan and confirmation order and directing the Insurers to dismiss the claim with prejudice. ECF No. 1520-1. On April 28, 2025, the Court held a hearing on the motions, requested supplemental briefing on the issue of whether a "claim" arises when an executory contract is assumed under a Chapter 11 plan, and took the motions under advisement.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

A bankruptcy court always has jurisdiction to interpret and enforce its own prior orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also In re McDermott Int'l, Inc.*, No. 23-20436, 2024 WL 3875141 (5th Cir. Aug. 20, 2024) ("When a proceeding implicates the bankruptcy court's power to interpret and enforce its own orders, it is core in at least the 'arising in' way." (citing *Travelers Indem. Co.*, 557 U.S. at 151)).

## DISCUSSION

SandRidge seeks an order enforcing its Chapter 11 plan and the Court's confirmation order and directing the Insurers to dismiss the Insurer Subrogation Claim.  SandRidge's D&O Policies and Indemnification Obligations toward Bennett and Grubb were assumed under the plan.  They are post-petition obligations of SandRidge.  This order overrules SandRidge's defenses that the Indemnification Obligations were canceled, released, terminated or discharged by the plan.  SandRidge retains all other defenses.  The assertion of the Insurer Subrogation Claim does not violate the plan.  There is no cause to reopen this bankruptcy case.  SandRidge's motions are denied.

## I.   THERE IS NO CAUSE TO REOPEN THIS BANKRUPTCY CASE

A bankruptcy court may reopen a case "in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b); *see* Fed. R. Bankr. P. 5010 ("On the debtor's or another party in interest's motion, the court may, under § 350(b), reopen a case.").  "The term 'for other cause' is a broad term which gives the bankruptcy court discretion to reopen a closed estate or

proceeding when cause for such reopening has been shown." *In re Walker*, 323 B.R. 188, 194 (Bankr. S.D. Tex. 2005) (citing *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). "A bankruptcy court must consider the facts presented in each case and use its discretion to determine whether cause exists to reopen a case." *Id.* Generally, "compelling circumstances" must be shown to reopen a bankruptcy case. *See id.*; *In re Johnson*, No. 4:17-CV-03410, 2018 WL 4955235, at *2 (S.D. Tex. Oct. 11, 2018). A final decree closing a case does not deprive the court of jurisdiction to reopen the case in order to enforce and interpret its own orders. *See In re SL Mgmt., LLC*, No. 08-40143-RFN-11, 2010 WL 1379749 (Bankr. N.D. Tex. Mar. 30, 2010), *report accepted in part, rejected in part sub nom. Weaver v. Texas Cap. Bank N.A.*, No. 3:09-CV-380-M, 2010 WL 3119397 (N.D. Tex. Aug. 5, 2010), *rev'd*, 660 F.3d 900 (5th Cir. 2011).

SandRidge seeks to reopen its bankruptcy case in order to enforce its plan and the Court's confirmation order. It argues that the Insurer Subrogation Claim asserted in Oklahoma state court violates the plan and confirmation order because the claim was released through the plan. SandRidge seeks an order directing the Insurers to dismiss their lawsuit.

SandRidge is correct in arguing that if the Insurers are violating the plan through their assertion of the Insurer Subrogation Claim, good cause exists to reopen SandRidge's case for the purpose of enforcing the plan. But as explained below, the Insurer Subrogation Claim does not violate the plan. SandRidge asserts no other cause to reopen its bankruptcy case.

SandRidge's motion to reopen its bankruptcy case is denied.

## II. THE D&O POLICIES AND INDEMNIFICATION OBLIGATIONS ARE EXECUTORY CONTRACTS THAT WERE ASSUMED UNMODIFIED THROUGH SANDRIDGE'S PLAN

SandRidge argues that the Insurer Subrogation Claim is a "Section 510(b) Claim" for contribution or reimbursement that was

canceled and released under the plan.  SandRidge also argues that the D&O Policies are not executory contracts capable of assumption under the plan.  Both arguments fail.

### A.      The D&O Policies Are Executory Contracts Assumed Under the Plan

SandRidge argues that the D&O Policies are not executory contracts, and the plan could not have assumed them, making the indemnification claim (by way of subrogation) a contingent and unliquidated claim that was discharged under the plan.   In the alternative, SandRidge argues that, if executory, the D&O Policies are a financial accommodation that could not be assumed under § 365(c)(2) of the Bankruptcy Code, similar to an extension of credit.

SandRidge points to the plan's provision assuming the D&O Policies, which states "[t]o the extent the D&O Liability Insurance Policies are considered to be Executory Contracts, . . . the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies . . . ."  ECF No. 1530-4 at 105.  SandRidge argues that there was never a finding in the bankruptcy case that the D&O Policies were executory contracts.

The confirmation order has the weight of a final judgment and acts as res judicata on all issues that could have been asserted pertaining to a Chapter 11 plan.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275–76 (2010) ("[T]he Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was legal error. . . .  But the order remains enforceable and binding on United because United has notice of the error and failed to object or timely appeal. . . .  Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief."); *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992).

The plan provision quoted by SandRidge also provides that "[e]ntry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies."  ECF No. 1530-4 at 105. The two sentences at issue, without editing, are:

> To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies.

As contemplated by the second sentence contained in the excerpt, the Confirmation Order was entered on September 9, 2016.  ECF No. 878.  An amended order was entered on September 20, 2016.  ECF 901. Entry of the confirmation order cemented the assumption.

The confirmation order precludes litigation of whether the contracts were assumable.  *Espinosa*, 559 U.S. at 275–76.  As in *Espinosa*, the Court will not revisit whether the confirmation order's determination was correct.  The order is final and that is all that matters.  *Espinosa*, 559 U.S. at 269.

The D&O Policies were assumed under SandRidge's plan.

## B.   The Indemnification Obligations Are Assumed Under the Plan

SandRidge argues that the Insurer Subrogation Claim is merely a § 510(b) claim for reimbursement or contribution arising from the

Securities Lawsuits, which was canceled under the plan. The Plan defines a "Section 510(b) Claim," in part, as "any Claims against the Debtors arising from . . . reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, including the Claims asserting against the Debtors in [the Securities Lawsuits]." ECF No. 1530-4 at 89. "Section 510(b) Claims" are classified as Class 7 under the plan and are "deemed canceled and released." ECF No. 1530-4 at 98. According to SandRidge, even if the Indemnification Obligations were assumed through the plan, the plan permits modifications of assumed contracts, and the Class 7 treatment of "Section 510(b) Claims" acts as a modification of the Indemnification Obligations to eliminate those obligations with respect to the Securities Lawsuits. *See* ECF No. 1530-4 at 106.

SandRidge identifies a possible inconsistency in the plan with respect to the assumption of the Indemnification Obligations. The plan's definition of "Section 510(b) Claims" is broad enough to include the Insurer Subrogation Claim. The Insurer Subrogation Claim is based on subrogation into Bennett's and Grubb's rights to indemnification from SandRidge for their $17 million settlement of the Securities Lawsuits. Because the conduct giving rise to the Securities Lawsuits occurred during the policy period of the D&O insurance policies and the lawsuits arose prepetition, the Insurers had a pre-petition unliquidated and contingent claim for subrogation against SandRidge based on Bennett's and Grubb's unliquidated and contingent claims for indemnification from SandRidge. A right to "reimbursement or contribution" under § 510(b) of the Bankruptcy Code includes claims for indemnification. *See In re Superior Offshore Int'l, Inc.*, No. 08-32590, 2009 WL 2018063, at *2 (Bankr. S.D. Tex. July 6, 2009) (subordinating an indemnity claim under § 510(b) of the Bankruptcy Code); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 824 (Bankr. D. Del. 1999) ("[T]he plain language of § 510(b), its legislative history, and applicable case law clearly show that § 510(b) intends to subordinate the indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by

purchasers or sellers of the debtor's securities."). The plan allegedly cancels and releases all pre-petition claims for indemnification arising from the Securities Lawsuits, which would include the Insurers', Bennett's, and Grubb's contingent and unliquidated claims. *See In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *3–4 (Bankr. S.D. Tex. Dec. 28, 2022).

But the plan also establishes that the Indemnification Obligations would remain unmodified upon assumption. Article IV.M. of the plan, which assumes the D&O Policies, states,

> Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed.

ECF No. 1530-4 at 105. Similarly, Article V.D. of the plan, which assumes the Indemnification Obligations, states,

> The Debtors and Reorganized Debtors shall assume the Indemnification Obligations for the Debtors' current and former directors, officers, managers, and employees, and current attorneys, accountants, investment bankers, and other professionals of the Debtors, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose; *provided*, *however*, that one or more former (as of the Petition Date) directors and officers of the Debtors, as agreed by the Debtors and the Required Second Lien Creditors, shall not have such indemnification

> obligations assumed.   Notwithstanding the foregoing,
> nothing shall impair the ability of the Reorganized Debtors
> to modify indemnification obligations; *provided* that none
> of the Reorganized Debtors shall amend and/or restate any
> New Organizational Documents before or after the
> Effective Date to terminate or adversely affect any of the
> Indemnification Obligations.

ECF No. 1530-4 at 108.

The Court cannot ignore language in the plan specifically expressing that the Indemnification Obligations will remain unmodified, especially when that language is included in the very provisions governing the assumption of those obligations.   Despite the *potential* for an inconsistency, on closer examination there is no inconsistency.   The indemnification assumption states that the assumption is "[n]otwithstanding anything to the contrary contained herein," and that the obligations would not be "modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, *irrespective of when such obligation arose*."  Its primacy over the § 510 provisions is plain.   In the end, there is no inconsistency to reconcile.

For the purposes of completeness, the Court notes that the Court would nevertheless reconcile any inconsistency in the Insurers' favors. The Court must give effect to the specific provisions governing assumption.   *See Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions."); *In re LRI III, Ltd.*, 464 F. App'x 263, 267 (5th Cir. 2012) ("We interpret bankruptcy plans in accordance with the rules of contract interpretation.").

Moreover, although Article V.D. provides that "nothing shall impair the ability of the Reorganized Debtors to modify indemnification obligations," the following statement that SandRidge shall not "amend

and/or restate any New Organization Documents before or after the Effective Date to terminate or adversely affect any of the Indemnification Obligations" further reinforces that those obligations are to remain unmodified. The provision explains that the defined "Indemnification Obligations" are not to be impaired, notwithstanding that any other potential undefined indemnification obligation may be modified. SandRidge's indemnification obligations toward Bennett and Grubb fall under the defined term, and unlike the obligations toward Tom Ward, were not excluded by the confirmation order. ECF No. 1530-4 at 65–66. They are to remain unmodified per the provisions of the plan. *See* ECF No. 1530-4 at 84.

SandRidge points to two other provisions in an attempt to support its argument that the Insurer Subrogation Claim was canceled and released, but the provisions do not apply to the claim. The confirmation order, in a provision titled "Provisions Regarding the Direct Action Plaintiffs" states:

> The Plan and this Confirmation Order do not, and nothing in the Plan or this Confirmation Order shall be interpreted to, (i) discharge, release, or otherwise impact any (x) claims (as defined under Section 101(5) of the Bankruptcy Code) or other Causes of Action asserted in, or that could have been asserted based upon the facts and circumstances alleged in, the complaints in [the Securities Lawsuits] (collectively, the "Direct Actions") by any Entity that was appointed, or was eligible to be appointed, as lead plaintiff, or other members of the proposed classes, in the Direct Actions (collectively, the "Direct Action Plaintiffs"), in their capacity as such, against any Non-Debtor Subsidiary, Released Party (other than any Debtor), or other Entity other than a Debtor, whether or not currently named as a defendant in a Direct Action (each, a "Non-Debtor Litigant"), or (y) any future claims (as defined in Section 101(5) of the Bankruptcy Code) or Causes of Action against

any Non-Debtor Litigant determined to relate back to the filing of any such complaint; . . . or (iv) release any Debtor as a nominal defendant, or enjoin parties from pursuing the Direct Actions against a Reorganized Debtor as a nominal defendant, in each case solely to the extent necessary to recover on any claims (as defined in section 101(5) of the Bankruptcy Code) or other Causes of Action against the Debtors from available remaining coverage under any applicable insurance policy, to the extent applicable.

ECF No. 1530-4 at 61–62.

SandRidge argues that this provision is an "insurance exception" permitting claims against SandRidge only nominally for the purpose of pursuing insurance recovery. To this point, SandRidge contends that the phrase "claims . . . or other Causes of Action . . . that could have been asserted based upon the facts and circumstances alleged in, the complaints in [the Securities Lawsuits]" is broad enough to include the Insurer Subrogation Claim, indicating that it could not be asserted against SandRidge in anything other than a nominal capacity.

SandRidge asks the Court to ignore the phrase "by any Entity that was appointed, or was eligible to be appointed, as lead plaintiff, or other members of the proposed classes, in the Direct Actions (collectively, the 'Direct Action Plaintiffs')" because it was not included in subsection (iv) of the provision. This is nonsense. The indemnification claims were held by the defendants in the lawsuit. The restriction is against the plaintiffs in the lawsuit. It is the defendants' Insurers asserting subrogation. The argument is rejected.

Finally, it is worth mentioning that SandRidge heavily relies on the following phrase in Article VIII.F. of the plan as evidence that the plan modified the Indemnification Obligations to release those obligations relating to the Securities Lawsuits:

> nothing in the foregoing shall result in any of the Debtors'
> officers and directors waiving any indemnification Claims
> against the Debtors or any of their insurance carriers or
> any rights as beneficiaries of any insurance policies, which
> indemnification obligations and insurance policies shall be
> assumed by Reorganized Debtors, *except to the extent
> provided for in the Plan*.

ECF No. 1530-4 at 118 (emphasis added).

The plan assumes the Indemnification Obligations without modification or impairment and states that "one or more former (as of the Petition Date) directors and officers of the Debtors . . . shall not have such indemnification obligations assumed." ECF No. 1530-4 at 108. The best reading is that this phrase clarifies that although Article VIII.F. does not result in any officers or directors waiving their indemnification claims against SandRidge since those obligations are assumed, the plan may provide (and does provide with respect to Tom Ward) that the obligations pertaining to certain directors and officers will not be assumed.

The plan assumed the Indemnification Obligations toward Bennett and Grubb.

## C.   The Indemnification Obligations Are SandRidge's Post-Confirmation Obligations

The remaining issue is, if the Indemnification Obligations were assumed, then what happens to Bennett's and Grubb's pre-petition contingent and unliquidated claims for indemnification and the Insurers' corresponding pre-petition contingent and unliquidated subrogation claims?

The Fifth Circuit's decision in *In re National Gypsum Co.* is helpful in answering the question. 208 F.3d 498 (5th Cir. 2000). There, the court explained that under § 365 of the Bankruptcy Code, "a debtor may elect one of two options when assessing how to treat an executory

contract or unexpired lease to which it is a party; the contract or lease may either be rejected or assumed." *Id.* at 504. The court explained that "[t]he non-debtor, former contractual partner only becomes an unsecured creditor after rejection." *Id.* at 505. If a debtor assumes a contract, the contract "will remain in effect through and then after the completion of the reorganization. The non-debtor party to the agreement is not released from its duties and must continue to perform; likewise, the debtor must continue to perform or pay for the services or other costs that are not discharged." *Id.* As *National Gypsum* confirms, a counterparty to a contract with the debtor only has a claim against the debtor when its contract is rejected. Upon assumption, the contract becomes a post-petition obligation of the contract parties. *See also Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1281 (5th Cir. 1991), *on reh'g* (Feb. 27, 1992) (internal citations omitted) ("A party to a lease is considered a 'creditor' who is allowed to vote . . . only when the party has a claim against the estate that arises from *rejection* of a lease. . . . If, however, the debtor expressly assumes a lease, the lessee has no 'claim' against the debtor under § 1126(a). . . . The rights created by assumption of the lease constitute a post-petition administrative claim under section 503(b)(1)(A) of the Code.").

When SandRidge assumed the Indemnification Obligations through its plan, they became SandRidge's post-confirmation obligations. SandRidge's motion to enforce the plan is denied.

## III.   THE INSURERS ARE NOT ENTITLED TO ATTORNEYS' FEES BASED ON SANDRIDGE'S MOTION TO ENFORCE

The Insurers request an award of attorneys' fees and costs "incurred in defending against [SandRidge's] frivolous Motions and Reorganized SandRidge's continued violation of the Plan and Confirmation Order." ECF No. 1526 at 49–50.

The Insurers do not cite a legal basis for the award of attorneys' fees. Nevertheless, although SandRidge's plan violation defenses are

overruled, the Court finds them to be bona fide defenses made in good faith.

The Court denies the Insurers' request for attorneys' fees based on SandRidge moving to enforce its plan.  But the Court does not foreclose the Insurers' opportunity to seek any attorneys' fees in a non-bankruptcy court if they are owed as a consequence of any contractual breach by SandRidge.

## CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED 05/23/2025

_____
Marvin Isgur
United States Bankruptcy Judge